NOT FOR PUBLICATION                                                              CLOSED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                    :
CHERYL TROMBETTA,                   :
                                    :
            Plaintiff,              :    Civ. No. 05-1740 (JAP)
                                    :
       v.                           :
                                    :    **OPINION**
COMMISSIONER OF SOCIAL SECURITY,    :
                                    :
            Defendant.              :
_____:

APPEARANCES:

James E. Gelman, Esq.
33-00 Broadway, Ste. 210
Fair Lawn, NJ 07410
       *Attorney for Plaintiff*

Christopher Christie
United States Attorney
Karen G. Fiszer
Special Assistant United States Attorney
Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278
       *Attorneys for Defendant*

PISANO, District Judge.

This matter comes before the Court pursuant to Sections 205(g) and 1631(c)(3) of the

Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g) and Section 1383(c)(3). Plaintiff

Cheryl Trombetta ("Plaintiff") seeks reversal or, in the alternative, remand of the final decision

of the Commissioner of the Social Security Administration ("Commissioner") denying her claim

for Disability Insurance Benefits ("DIB") and Disabled Adult Child's Benefits ("DAC"). The Court has jurisdiction to review this matter under § 405(g) and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. The issue presented is whether the Commissioner's decision to deny Plaintiff's application for DIB and DAC is supported by substantial evidence. For the reasons stated below, the Court remands this matter to the ALJ for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Plaintiff's Personal and Medical History

Plaintiff is a forty-one year old woman from Totowa, New Jersey who currently suffers from both an obsessive compulsive disorder and a depressive disorder. Whether Plaintiff is currently "disabled" under the Act, however, is not the central issue in this case. Instead, the central issue is whether Plaintiff was disabled at any time from January 1, 1986 to December 31, 1987.

Plaintiff asserts that she is entitled to DAC as provided in Title II of the Act based on the earnings record of her father, the "wage earner." *See* 42 U.S.C. §§ 401-433. To prove entitlement to DAC, Plaintiff must demonstrate that she has a disability that began before she reached her twenty-second birthday. 20 C.F.R. § 404.350(a)(5). Plaintiff, who turned twenty-two on June 12, 1987, alleges that the onset date of her disability is January 1, 1986. Therefore, the relevant period for the purpose of determining Plaintiff's entitlement to DAC is January 1, 1986 to June 12, 1987.

Plaintiff also claims she is entitled to DIB pursuant to Title II of the Act based on her own earnings record. To establish that she is entitled to DIB, Plaintiff must meet the insured status

requirements of the Act.  *See* 42 U.S.C. § 423(c).  Here, Plaintiff's insured status expired on December 31, 1987.  Thus, to receive DIB, Plaintiff must demonstrate that she became disabled on or before December 31, 1987.  Putting together Plaintiff's alleged onset date of disability and the time frame of her eligibility for DAC and DIB, the relevant period for the purposes of assessing Plaintiff's entitlement to benefits is January 1, 1986 to December 31, 1987.

Plaintiff graduated from high school in 1983.  She attended college for four years—apparently not a consistent full-time basis—but never graduated.  From 1983 to 1997, Plaintiff held a variety of part-time hourly wage jobs.  Among other things, Plaintiff worked as a movie extra, a salesperson in a department store, and a promotional model handing out cosmetics samples.  Though Plaintiff was able to perform these jobs, she testified that she has always suffered from a fear of socializing, feelings of anxiety, and a fear of people in general.  As further evidence of these fears, Plaintiff testified that she has never had a boyfriend or girlfriend.  Medical records from the UCLA Neuropsychiatric Hospital indicate, however, that as of 1997 she was engaged to be married.

Based on the evidence before the ALJ, Plaintiff first sought psychiatric care in September of 1989.  At that time, Plaintiff was under the care of Dr. Richard Feldman, a psychiatrist.  The details of Dr. Feldman's treatment and diagnosis, if any, are unknown because Plaintiff did not submit any medical records related to Dr. Feldman's treatment of her.  Indeed, those records have been destroyed.  (Administrative Record ("AR") at 295).  According to Dr. Feldman's billing records, however, he provided psychotherapy services to Plaintiff in 1989.  Medical records from the UCLA Neuropsychiatric Hospital that Plaintiff submitted to the Appeals Council but not to the ALJ suggest that, from 1993 to 1997, Dr. Nicotar treated Plaintiff for obsessive compulsive

3

disorder and an episode of depression. The UCLA records note that the onset of Plaintiff's obsessive compulsive disorder occurred in 1993. (AR at 307). Later, in 1999 and 2000, Plaintiff was under the care of Dr. Alireza Pakkar, M.D., who diagnosed Plaintiff with chronic depression, and obsessive compulsive disorder. Though Dr. Pakkar did not determine when these conditions arose, he stated that Plaintiff suffered from these conditions "for years."

Although Plaintiff did not present—and still has not presented—any medical evidence suggesting that the onset of her obsessive compulsive disorder and depressive disorder occurred during the relevant period, *i.e.*, January 1, 1986 to December 31, 1987, Plaintiff testified that she attempted suicide twice, once when she thirteen and again when she was twenty:

> Q. Were you under psychiatric care before 1987?
> A. No. But I did have two suicide attempts.
> Q. Oh my God.
> A. I had one when I was 13 and I took a bottle of Midol and they had to have me drink some fluid and I had to vomit up. And then my mother was very depressed on the end because she had cancer and I was sick, so I took her medication, Valium, and they had to take me from my grandmother's home at 20 and bring me to the hospital.
> Q. Well, it seems like you had a very serious problem. How come you didn't go to a psychiatrist, maybe that would have helped you out a little bit?
> A. Well, my mother was sick and she felt that we didn't have the funds.

(AR at 28.) Though Plaintiff did not submit to the ALJ any medical evidence relating to her attempted suicides, she now has records dated September 5, 1986 from the Wayne General Hospital in Wayne, New Jersey that corroborate her testimony, at least as to the second suicide attempt.

### B. Procedural History

Plaintiff filed an application for disability benefits on February 27, 2002. The Commissioner denied that application both initially and upon reconsideration. On Plaintiff's

4

request, a hearing was held on December 1, 2003 before Administrative Law Judge ("ALJ") Dennis G. Katz. Plaintiff, who was not represented by counsel, submitted evidence to the ALJ and, with the ALJ's assistance, provided testimony during the hearing. Plaintiff's grandmother, who cares for and lives with Plaintiff, appeared at the hearing and offered to provide testimony, but the ALJ declined. The Court notes that the ALJ undertook "reasonable effort[s]" to develop the record. (AR at 16). Specifically, the ALJ "issued a request for treatment information to Karl Norris, M.D.," whom Plaintiff identified as her "treating source for the period January 1986 to December 1987," but Dr. Norris responded that he did not have any such information. (*Id.*) Further, the ALJ accepted evidence that Plaintiff submitted in the month following the hearing.

On December 5, 2003, the ALJ issued a written decision denying Plaintiff's claims. In his decision, the ALJ acknowledged that physicians have diagnosed Plaintiff with an obsessive compulsive disorder and a depressive disorder, but concluded that the disorders are not "severe for purposes of establishing a disability" during the period of January 1, 1986 to December 31, 1987 because Plaintiff did not establish that she was diagnosed with the disorders during that period. Further, the ALJ issued the following findings:

> 1. The claimant met the disability insured status requirements of the Act on January 1, 1986—the date she alleged she became unable to work—and continued to meet them only through December 1987.
>
> 2. The claimant did not engage [in] any substantial gainful [work] activity from January 1, 1986 through December 1987.
>
> 3. None of the claimant's impairments are considered to have been "severe" under the Regulations during the period at issue.
>
> 4. The claimant was not under a "disability" as defined by the Social Security Act and Regulations at any time from January 1, 1986 through December 1987.

5

(AR at 18). On August 30, 2004, the Appeals Council affirmed the ALJ's decision, finding "no reason under [their] rules to review the Administrative Law Judge's decision." (AR at 4).

Plaintiff now challenges the ALJ's decision on the grounds that: (1) her lack of representation at the hearing resulted in prejudice because the ALJ failed to develop a complete record; and (2) the ALJ improperly deviated from the five-step sequential analysis set forth in 20 C.F.R. § 404.1520.

## II. DISCUSSION

### A. *Standard of Review*

The standard under which the District Court reviews an ALJ decision is whether there is substantial evidence in the record to support the ALJ's decision. *See* 42 U.S.C. 405(g); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). "[M]ore than a mere scintilla," substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The inquiry is not whether the reviewing court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence, therefore, may be slightly less than a preponderance. *See Hanusiewicz v. Bowen*, 678 F. Supp. 474, 476 (D.N.J. 1988).

The reviewing court, however, does have a duty to review the evidence in its totality. *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). As such, "a court must take into account whatever in the record fairly detracts from its weight." *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (internal quotations omitted). The Commissioner has a corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting

evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987). As the Third Circuit has instructed, a full explanation of the Commissioner's reasoning is essential to meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978). Nonetheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

### B.  Establishing a Disability Under the Act

"In order to establish a disability under the Social Security Act, [a plaintiff] must demonstrate some medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000) (internal quotations and citations omitted). Further, a claimant must demonstrate that the severity of his impairment(s) renders him "not only unable to do his previous work" but also, "considering his age, education, and work experience," unable to "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

Pursuant to 20 C.F.R. § 404.1520, the Commissioner employs the following five-step sequential analysis to evaluate each case and determine whether a claimant is "disabled" or "not disabled":

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education and past work experience to determine whether or not he is capable of performing other work which exists in the national economy. If he is incapable, a finding of disability will be entered. On the other hand, if the claimant can perform other work, he will be found not to be disabled.

20 C.F.R. § 404.1520(b)-(f). This sequential analysis requires the shifting of burdens of proof. *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994); *Wallace v. Sec'y of Health and Human Serv.*, 722 F.2d 1150, 1153 (3d Cir. 1983). The claimant bears the burden of proof at the first four steps of the analysis. The burden then shifts to the Commissioner at the final step to prove there is other work in the national economy which the claimant can perform in light of her residual functional capacity, age, education and work experience. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987).

### *C. The Court Remands Trombetta's Claims to the ALJ*

Plaintiff appeals the ALJ's decision on two principal grounds: (1) that Plaintiff's lack of representation resulted in prejudice to her and (2) that the ALJ improperly deviated from the five-step sequential analysis. As explained below, the Court finds that, although Plaintiff made a

knowing and voluntary waiver and was competent to represent herself at the hearing, Plaintiff's lack of representation resulted in prejudice because the ALJ failed to develop a complete record. Thus, the Court remands the matter to the ALJ for further proceedings. The Court is confident that on remand Plaintiff, who is now represented by counsel, will have an opportunity to develop a complete record of the relevant evidence. Additionally, a remand will provide the ALJ with an opportunity to perform the full five-step sequential analysis, assess whether Plaintiff presently is disabled, and if so, determine the onset date of her disabilities.

### 1. Plaintiff Suffered Prejudice from Her Lack of Representation

Plaintiff advances three challenges related to her lack of representation during the hearing before the ALJ: (1) Plaintiff's psychological conditions precluded her from making a valid waiver of her right to representation; (2) the ALJ should have appointed counsel because Plaintiff lacks the mental capacity to proceed *pro se* and (3) the ALJ failed to fulfill his duty to develop the record where, as here, the claimant does not have legal representation.

"The fact that a claimant is unrepresented by counsel and has knowingly waived th[e] right [to representation] is not alone sufficient for remand." *Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980). The ALJ "owes a duty to help [the claimant] develop the administrative record" when the claimant proceeds *pro se*. *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). The ALJ's duty is not "to be the claimant's advocate," *see Ricci v. Apfel*, 159 F. Supp. 2d 12, 23 (E.D. Pa. 2001), but he "must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Reefer*, 326 F. Supp. 2d. at 380 (citations, internal quotations omitted). Further, to the extent that lack of counsel results in an unfair hearing or prejudice to the claimant, remand is necessary. *See Gauthney v. Shalala*, 890 F. Supp. 401, 410 (E.D. Pa.

1995). "The essential inquiry is whether the incomplete record reveals evidentiary gaps which result in prejudice to the claimant." *Id.*

Regarding the validity of Plaintiff's waiver of her right to representation, the facts demonstrate that she knowingly and voluntarily waived her right to counsel. In February 2003, prior to the administrative hearing, the Commissioner mailed Plaintiff a letter which specifically advised her of her right to representation and included a list of groups that would assist her in finding counsel prior to the hearing. (AR at 119-20). Then, on November 13, 2003, the Commissioner mailed Plaintiff a Notice of Hearing which reminded her of right to have an attorney represent her at the hearing. (AR at 47-50). At the outset of the December 1, 2003 hearing, the ALJ confirmed that Plaintiff received the information regarding her right to representation and that Plaintiff intended to represent herself. Though the Court is aware, as was the ALJ, that Plaintiff suffers from significant mental health problems, there is nothing in the record suggesting that Plaintiff did not understand her rights or lacked the mental capacity to exercise those rights. Thus, Plaintiff's lack of counsel does not entitle her to a remand. *See Livingston*, 614 F.2d at 345.

Moreover, the Court is not persuaded by Plaintiff's argument that the ALJ was required to appoint an attorney to represent her during the hearing. In Plaintiff's view, her mental incompetence is evident because she did a poor job representing herself. The Court, however, rejects this argument and the faulty logic upon which it rests. Indeed, accepting Plaintiff's argument, any litigant who failed to present his case in a thorough and skillful manner would be deemed incompetent. Further, the record belies Plaintiff's claims of incompetence. Plaintiff submitted evidence in support of her claim both during and after the hearing. She provided

complete and coherent answers to the ALJ's questions on a number of topics ranging from her illness to her work history.  (*See* AR at 24-36).  As there is no evidence tending to show that Plaintiff lacked the mental competence to pursue her claim without the assistance of an attorney, the Court finds that the ALJ was not required to appoint counsel to represent Plaintiff.[1]

As Plaintiff argues, however, there are some evidentiary gaps in the record that resulted in prejudice to Plaintiff.  The Court notes that the ALJ took pains to develop a factual record.  He questioned Plaintiff about her mental illness, treatment history and work history, among other things.  Also, the ALJ "issued a request for treatment information to Karl Norris, M.D.," whom Plaintiff identified as her "treating source for the period January 1986 to December 1987," but Dr. Norris responded that he did not have any such information.  Lastly, the ALJ accepted evidence that Plaintiff submitted in the month following the hearing.  Nevertheless, the Court finds that the ALJ improperly failed to develop all of the facts regarding Plaintiff's two suicide attempts, one of which occurred during the relevant period.  In the Court's view, the suicide attempts, particularly the one that occurred during the relevant period, are probative of Plaintiff's mental health condition during the relevant period.  As the hearing transcript demonstrates, the ALJ did not probe into the circumstances regarding the suicide attempts, Plaintiff's mental health at the time of the attempts, or the existence of any relevant medical records:

    Q.  Were you under psychiatric care before 1987?
    A.  No.  But I did have two suicide attempts.
    Q.  Oh my God.

---

[1] The Court notes, however, that ALJs should exercise a heightened level of care to ensure that a claimant who suffers from mental and/or psychological impairments understands her right to representation and has made a knowing and voluntary waiver of that right.  Similarly, ALJs should probe claimants suffering from mental and/or psychological impairments to confirm that such claimants possess the requisite competence to proceed without counsel.

>    A.  I had one when I was 13 and I took a bottle of Midol and they had to have me drink some fluid and I had to vomit up.  And then my mother was very depressed on the end because she had cancer and I was sick, so I took her medication, Valium, and they had to take me from my grandmother's home at 20 and bring me to the hospital.
>    Q.  Well, it seems like you had a very serious problem.  How come you didn't go to a psychiatrist, maybe that would have helped you out a little bit?
>    A.  Well, my mother was sick and she felt that we didn't have the funds.

(AR at 28).  Though the medical evidence before the ALJ supports his conclusion that Plaintiff was not disabled during the relevant period,[2] the Court is reluctant to affirm a conclusion based on an incomplete record.  Further, without the benefit of a complete record and the ALJ's analysis of that record, the Court is unable to engage in a meaningful review of the ALJ's decision.  *See Gober*, 574 F.2d at 776.  Thus, the Court finds that the case should be remanded to give Plaintiff, who now has counsel, the opportunity to develop a fuller record, particularly as it pertains to her second suicide attempt and her mental and psychological condition at that time.

Plaintiff also argues that the record before the ALJ was incomplete because the ALJ did not hear testimony from Plaintiff's grandmother with whom Plaintiff lived during the relevant period.  Plaintiff claims that her grandmother's testimony would have been probative on the issue of whether, during the relevant period, Plaintiff had a disability of such severity that it prevented her from performing substantial gainful activity.  On remand, Plaintiff may elicit testimony from her grandmother if she so chooses.

### 2. The ALJ Failed to Follow the Five-step Sequential Analysis and Determine the

---

[2] Indeed, there is evidence that Plaintiff previously stated that November 1996 was the onset date of her psychological impairments.  (AR at 17 n.2).

**Onset Date of Plaintiff's Disabilities**

Plaintiff also challenges the ALJ's decision on the grounds that the ALJ improperly evaluated the evidence that was before him. Specifically, Plaintiff contends that the ALJ concluded that Plaintiff has been diagnosed with severe impairments—obsessive compulsive disorder and a depressive disorder—but incorrectly found the claimant "not disabled" without completing the requisite sequential analysis. Further, in Plaintiff's view, the ALJ was required to determine the onset date of Plaintiff's impairments. A review of the ALJ's decision reveals that the ALJ did not proceed past step two of the five-step sequential analysis even though he apparently concluded that Plaintiff satisfied step two of the analysis, *i.e.*, that she suffers from severe impairments. The ALJ further concluded, however, that Plaintiff is not entitled to benefits because there is no medical evidence suggesting that she suffered from these impairments during the relevant period. Though the overwhelming weight of the evidence presented to the ALJ supports that finding, Plaintiff is correct that ALJ should have performed the full sequential analysis to determine whether Plaintiff is currently disabled. If, on remand, the ALJ finds that Plaintiff presently is disabled, he must then determine the onset date of Plaintiff's disabilities pursuant to SSR 83-20. *See* SSR 83-20, 1983 WL 31249 (S.S.A. 1983).

## III.  CONCLUSION

For the reasons stated above, the Court remands this matter to the ALJ for further proceedings consistent with this opinion. An appropriate order accompanies this opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated:  December 28, 2006